**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AMIR AHMADIYAR, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASPIRE LAW GROUP, PLLC, a Michigan Professional Limited Liability Company,<br><br>Defendant. | Civil Action No.<br>1:26-cv-01792-PTG-LRV<br><br>Hon. Patricia Tolliver Giles<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT** |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT

<u>**TABLE OF CONTENTS**</u>


**TABLE OF CONTENTS** ..... i

**TABLE OF AUTHORITIES** ..... iii

**INTRODUCTION** ..... 1

**STATEMENT OF ALLEGATIONS** ..... 3

- **A. The Single Alleged Prerecorded Call.** ..... 3
- **B. Plaintiff's Callback and Subsequent Email.** ..... 3
- **C. The Claims Asserted Against Aspire.** ..... 4

**STANDARD OF REVIEW** ..... 4

- **A. Rule 12(b)(2): Personal Jurisdiction** ..... 4
- **B. Rule 12(b)(6): Failure to State a Claim** ..... 5
- **C. Rule 12(b)(1): Standing** ..... 6

**ARGUMENT** ..... 6

**I. THIS COURT LACKS PERSONAL JURISDICTION OVER ASPIRE** ..... 6

- **A. Aspire's Declaration Refutes Plaintiff's Only Jurisdictional Allegation.** ..... 7
- **B. Aspire Is Not Subject to General Jurisdiction in Virginia.** ..... 8
- **C. Plaintiff Cannot Establish Specific Jurisdiction Because the Challenged Call Was Not a Forum Contact Created by Aspire.** ..... 9
- **D. The Post-Callback Email Does Not Supply the Missing Jurisdictional Link.** ..... 10

**II. COUNT I FAILS BECAUSE PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT ASPIRE MADE THE CALL OR IS VICARIOUSLY LIABLE FOR IT.** ..... 11

- **A. No Direct Liability: Plaintiff Does Not Plausibly Allege That Aspire Directly Made the Prerecorded Call.** ..... 11
- **B. No Vicarious Liability: Plaintiff Does Not Plead Facts Supporting Vicarious Liability.** 13
- **C. The Subsequent Enrollment Email Does Not Cure the Attribution Defect.** ..... 14

**III. COUNT II FAILS TO STATE A CLAIM UNDER THE VIRGINIA TELEPHONE PRIVACY PROTECTION ACT** ..... 16

- **A. Plaintiff Does Not Plausibly Allege That Aspire Was the "Telephone Solicitor."** ..... 16
- **B. Aspire Is Not Plausibly Alleged to Be a "Seller" Because the Solicitation Did Not Advertise Aspire's Property, Goods, or Services.** ..... 17
- **C. Count II Does Not Plausibly Allege a Violation of Any Substantive VTPPA Provision.** ..19

**IV. PLAINTIFF LACKS ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF, AND HIS REQUESTS FOR DECLARATORY RELIEF PRESENT NO ONGOING CONTROVERSY** ..... 20

V. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE WILLFUL OR KNOWING CONDUCT WARRANTING TREBLE DAMAGES UNDER THE TCPA ..... 22

CONCLUSION ..... 23

## TABLE OF AUTHORITIES

### Cases

*Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ........ passim
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 5
*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ........ 6
*Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) ........ 6, 21
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 5
*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003) ........ 5, 7, 8
*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........ 6, 20, 21
*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009) ........ 9, 10
*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ........ 8, 9
*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ........ 6
*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ........ 8
*Green v. Mansour*, 474 U.S. 64 (1985) ........ 21
*Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243 (4th Cir. 2018) ........ 13
*Initiatives, Inc. v. Korea Trading Corp.*, 991 F. Supp. 476 (E.D. Va. 1997) ........ 5, 7
*International Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310 (1945) ........ 9
*Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012) ........ 21
*Matthews v. Senior Life Ins. Co.*, No. 1:24-CV-1550-MSN-LRV, 2025 WL 1181789 (E.D. Va. Apr. 22, 2025) ........ 12, 15
*McGonigle v. Dickey's Barbecue Restaurants, Inc.*, No. 1:25-CV-01062 (RDA/IDD), 2026 WL 2114507 (E.D. Va. July 22, 2026) ........ 22, 23
*Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993) ........ 4, 5
*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005) ........ 5
*Smith v. Direct Building Supplies, LLC*, No. 20-3583, 2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ........ 15
*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........ 6, 20
*Walden v. Fiore*, 571 U.S. 277 (2014) ........ 9
*Wells v. Johnson*, 150 F.4th 289 (4th Cir. 2025) ........ 21

### Statutes

47 U.S.C. § 227(b)(1)(A)(iii) ........ 4, 11
47 U.S.C. § 227(b)(3) ........ 22, 23
Fed. R. Civ. Pro 12(b)(1) ........ i, 6, 22, 23
Fed. R. Civ. Pro. 12(b)(2) ........ passim
Fed. R. Civ. Pro. 12(b)(6) ........ 3
Va. Code Ann. § 59.1-510 ........ passim
Va. Code Ann. § 59.1-514.1(B) ........ 18, 19
Va. Code Ann. §§ 59.1-511-515 ........ 19

## INTRODUCTION

This case rests on an inferential leap that the Complaint never supports with facts.

Plaintiff alleges that he received a single prerecorded call from a person identifying herself as "Kiana Navarro," who offered him a $39,000 loan and provided a callback number. Compl. ¶¶ 16-18. However, the recorded message never mentions Aspire Law Group, PLLC ("Aspire"), a law firm, or any service Aspire provides. Nor does the Complaint allege who Navarro is, whom she works for, who placed the call, what number the call originated from, or who owns or controls the callback number.

Aspire enters the alleged sequence only later, after Plaintiff himself returned the unidentified caller's call. Plaintiff alleges that he voluntarily called the number provided in the recording and spoke with an unidentified live agent, who assessed his eligibility for financial products and then encouraged him to proceed with an application and enrollment process. *Id.* ¶¶ 19-20. The Complaint does not identify that agent, allege whom the agent worked for, or connect the agent to Aspire. Only "[s]hortly thereafter" did Plaintiff allegedly receive a separate email from "Joseph Adams," who identified himself as an "Enrollment Supervisor"; the email's signature block included a link to Aspire's website. *Id.* ¶¶ 21-23. From that downstream connection, the Complaint simply declares that "Defendant called Plaintiff" and "Defendant initiated telephone solicitation calls." *Id.* ¶¶ 16, 63. But it pleads no facts connecting Aspire to the placement of the antecedent prerecorded call and no agency relationship through which Aspire could be responsible for a call placed by someone else.

That same unsupported premise underlies Plaintiff's assertion of personal jurisdiction. The Complaint's entire jurisdictional allegation is that Aspire "directed its calls to Plaintiff who resides

in this District." *Id.* ¶ 8. Aspire's accompanying Declaration affirmatively establishes that Aspire did not place, authorize, or direct the challenged call and that Aspire lacks the Virginia contacts necessary to support jurisdiction. Plaintiff cannot establish personal jurisdiction by assuming the very attribution his Complaint fails to plausibly plead, particularly when Aspire's sworn evidence directly refutes it.

The Complaint independently fails on the merits. Count I does not plausibly allege that Aspire either (1) physically initiated the call or (2) is vicariously liable on the alleged basis that the unidentified caller acted as Aspire's agent, as required to impose direct or vicarious liability under the TCPA. Count II fares no better under the VTPPA: the Complaint does not plausibly allege that Aspire either (1) made or caused the solicitation, as required to qualify as a statutory "telephone solicitor," or (2) was the statutory "seller" whose property, goods, or services the solicitation offered or advertised. Indeed, the solicitation quoted in the Complaint offered a $39,000 extension of credit, not Aspire's legal services. Nor does Count II plead facts establishing that the alleged solicitation violated any substantive VTPPA prohibition.

Finally, Plaintiff's requests for extraordinary injunctive and declaratory relief exceed even what his allegations could support. A single completed call, with no alleged recurrence or threatened future contact, does not establish Article III standing for a permanent injunction or backward-looking declarations concerning completed conduct. The bare assertion that Aspire acted "willfully and knowingly" does not support treble damages under the TCPA, particularly where the Complaint does not plausibly allege that Aspire knew of or participated in the call at all. The Court should therefore dismiss the Complaint for lack of personal jurisdiction or, alternatively, dismiss the claims and requests for relief as set forth below.

## STATEMENT OF ALLEGATIONS

The following allegations are drawn from the Complaint and are recited solely for purposes of Defendant's Rule 12(b)(6) motion. Aspire does not concede their truth for purposes of its Rule 12(b)(2) jurisdictional challenge or otherwise.

### A. The Single Alleged Prerecorded Call.

Plaintiff alleges that, on February 13, 2026, he received a call on his cellular telephone and, upon answering, heard a prerecorded message. Compl. ¶¶ 16-17. The message, quoted in full in the Complaint, stated:

> This is Kiana Navarro with the executive loan review unit. I wanted to reach out because we've just finished reviewing your file, and I do have a status update. You're showing an approval for $39,000 with a 60 month term. 855-909-0914. Based on the underwriting notes that I see here, it looks like we should be able to move with your approval forward. If you're still looking to wrap this up, you can press 2 now or call us back at 855-909-0914. Compl. ¶ 18.

The prerecorded message does not mention Aspire, identify Navarro as affiliated with Aspire, or otherwise reference Aspire or its services.

### B. Plaintiff's Callback and Subsequent Email.

Plaintiff alleges that he then "called back and spoke with a live agent," was told he was eligible for a loan, and was "encouraged [to] conduct an application and enrollment process." *Id.* ¶¶ 19-20. The Complaint does not allege that the live agent identified Aspire, claimed to be affiliated with Aspire, or otherwise referenced Aspire or its services.

Only ***after*** Plaintiff initiated the callback and spoke with the live agent did he allegedly receive an email from "Joseph Adams," who identified himself as an "Enrollment Supervisor." *Id.* ¶ 21. The email contained a hyperlink to an online enrollment page, and its signature block included a link to Aspire's website. *Id.* ¶¶ 22-23.

The Complaint does not allege that Navarro was employed by, affiliated with, or acting on behalf of Aspire; that the callback number, 855-909-0914, belonged to or was controlled by Aspire; or that the unidentified live agent was employed by, affiliated with, or acting on behalf of Aspire. Nor does the Complaint even identify the number from which the prerecorded call originated, much less allege facts connecting that number to Aspire. Aspire thus appears for the first time in the alleged sequence only after the challenged prerecorded call had ended, Plaintiff himself had returned the call, and Plaintiff had spoken with an unidentified live agent.

Although the Complaint elsewhere characterizes "Defendant" as having "called" or "placed calls" to Plaintiff, *id.* ¶¶ 16, 35, 63, it alleges no underlying facts connecting Aspire to the caller, either telephone number, or the placement of the challenged call. Nor does it allege an agency relationship or facts showing Aspire's authorization, direction, or control of the call.

### C. The Claims Asserted Against Aspire.

Based on these allegations, Plaintiff asserts a nationwide putative-class claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii) and a Virginia-subclass claim under the Virginia Telephone Privacy Protection Act ("VTPPA"), Va. Code §§ 59.1-510 *et seq*. Compl. ¶¶ 56-69. Plaintiff seeks statutory damages under both statutes, treble damages under the TCPA, declaratory and injunctive relief, attorneys' fees and costs, and classwide relief. *Id*. at Prayer for Relief.

## STANDARD OF REVIEW

### A. Rule 12(b)(2): Personal Jurisdiction

On a motion under Rule 12(b)(2), Plaintiff bears the burden of establishing personal jurisdiction over Defendant. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). Where, as here, the Court resolves the jurisdictional question without an evidentiary hearing and

on the motion papers, supporting affidavits, and allegations of the Complaint, Plaintiff need only make a *prima facie* showing of a sufficient jurisdictional basis. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Mylan Labs.*, 2 F.3d at 60.

In determining whether Plaintiff has made that showing, the Court construes the relevant pleading allegations in Plaintiff's favor and draws reasonable inferences for the existence of jurisdiction. *Mylan Labs.*, 2 F.3d at 62. The Court's inquiry, however, is not confined to the Complaint. Rather, it may consider the parties' affidavits and other supporting evidence in determining whether Plaintiff has carried his jurisdictional burden. *Id.* (explaining that courts are not required "to look solely to the plaintiff's proof"); *Initiatives, Inc. v. Korea Trading Corp.*, 991 F. Supp. 476, 477-78 (E.D. Va. 1997) (resolving Rule 12(b)(2) challenge "based on the affidavits and the supporting documents" and dismissing for lack of personal jurisdiction); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-401 (4th Cir. 2003) (affirming Rule 12(b)(2) dismissal based on record demonstrating insufficient forum contacts).

**B. Rule 12(b)(6): Failure to State a Claim**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Id.* at 555. Factual allegations must raise the right to relief above a speculative level. *Id*. Where a complaint pleads facts that are "merely consistent with" liability, it "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

While the Court must accept well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff, legal conclusions are not entitled to the assumption of

truth. *Iqbal*, 556 U.S. at 678-79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("To discount such unadorned conclusory allegations, 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" (internal citations omitted)). Courts "may not assume that the plaintiff can prove facts that he has not alleged or that defendants have violated the law in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Because the requisite factual allegations are not present in the Complaint, Plaintiff's claims must be dismissed.

### C. Rule 12(b)(1): Standing

A challenge to Article III standing implicates the Court's subject-matter jurisdiction and is properly raised under Rule 12(b)(1). Plaintiff bears the burden of establishing standing and must establish it separately "for each claim that [he] press[es] and for each form of relief that [he] seek[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

A plaintiff seeking prospective injunctive or declaratory relief must establish a "real and immediate threat" of future injury; past exposure to allegedly unlawful conduct, without more, does not establish a present controversy supporting prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 95-96, 110 (1983); *Beck v. McDonald*, 848 F.3d 262, 277 (4th Cir. 2017) (requiring "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way") (internal quotation marks omitted).

## ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER ASPIRE

Plaintiff's entire jurisdictional allegation is one sentence: "[t]he Court has personal jurisdiction over the Defendant because it directed its calls to Plaintiff who resides in this District."

Compl. ¶ 8. Plaintiff pleads no other Virginia contact: no Virginia office, no Virginia advertising, nothing beyond the bare assertion that Aspire "directed" the single challenged call into Virginia.

Aspire's accompanying Declaration of its principal, Stuart Dorf ("Decl."), directly addresses the jurisdictional facts. The Fourth Circuit has affirmed dismissal where a defendant supported its jurisdictional challenge with a declaration establishing the absence of material forum-directed contacts and the plaintiff failed to make the required prima facie showing. *Carefirst*, 334 F.3d at 396-403. Likewise, this Court has resolved a Rule 12(b)(2) challenge on the parties' affidavits and supporting documents and dismissed where the plaintiff failed to establish purposeful availment. *Initiatives*, 991 F. Supp. at 477-81.

As demonstrated below, the jurisdictional record establishes neither general nor specific jurisdiction over Aspire.

### A. Aspire's Declaration Refutes Plaintiff's Only Jurisdictional Allegation.

The Declaration establishes that Aspire is organized under Michigan law and maintains its principal place of business in Michigan. Decl. ¶ 2. Although Aspire is registered as a foreign professional limited liability company in Virginia and has one non-equity partner attorney associated with the Commonwealth, Aspire maintains no Virginia office or other physical place of business and owns no real property or bank accounts there. *Id.* ¶¶ 3-4. Aspire does not specifically advertise or market its services in Virginia and, indeed, does not specifically advertise or market its services at all. *Id.* ¶ 5.

More importantly, Aspire's limited Virginia connections have nothing to do with Plaintiff's claims. Aspire did not place, authorize, or direct the February 13, 2026 call to Plaintiff; did not provide Plaintiff's telephone number to the caller; and did not own or control the callback number

identified in the prerecorded message. *Id.* ¶¶ 7-9. Apart from Plaintiff's allegations concerning that call, Aspire has no Virginia-directed business activity relevant to this dispute. *Id.* ¶ 10.

*Carefirst* is instructive. There, the defendant submitted a declaration establishing, among other things, that it was headquartered in another state with no physical presence in the forum; lacked offices, telephone listings, and employees in the forum; and did not directly target forum residents. 334 F.3d at 394-96. The district court granted dismissal, and the Fourth Circuit affirmed because the plaintiff's evidence did not establish that the defendant purposefully directed the suit-related conduct toward the forum. *Id.* at 398-403. Here, the connection is weaker still: Aspire's sworn evidence establishes that it did not initiate or direct the very communication on which Plaintiff's jurisdictional theory depends.

**B. Aspire Is Not Subject to General Jurisdiction in Virginia.**

General (or "all-purpose") jurisdiction over a corporate defendant exists only where the defendant's contacts with the forum are "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a business entity such as Aspire Law Group, PLLC, the "paradigm" forums for general jurisdiction are ordinarily the state of formation and the state of its principal place of business. *Id.* at 118, 137-40. The Complaint pleads neither, much less any exceptional contacts that would render Aspire "at home" in Virginia. To the contrary, Aspire is organized under Michigan law and maintains its principal place of business in Michigan. Decl. ¶ 2. Although registered as a foreign professional limited liability company in Virginia and associated with one non-equity partner attorney there, Aspire maintains no Virginia office or other physical place of business and owns no real property or bank accounts in Virginia. *Id.* ¶¶ 3-4. Nothing alleged in the Complaint or contained in the jurisdictional record

remotely suggests the "exceptional case" in which Aspire could be considered at home in Virginia. *Daimler*, 571 U.S. at 139 n.19. General jurisdiction therefore is unavailable.

### C. Plaintiff Cannot Establish Specific Jurisdiction Because the Challenged Call Was Not a Forum Contact Created by Aspire.

Specific jurisdiction requires Plaintiff to establish that (1) Aspire purposefully availed itself of the privilege of conducting activities in Virginia; (2) Plaintiff's claims arise out of those forum-directed activities; and (3) the exercise of jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Plaintiff cannot satisfy the first requirement, which independently defeats specific jurisdiction.

The Supreme Court held that a jurisdictional analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citing *International Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). The relevant contacts "must arise out of contacts that the 'defendant *himself*' creates with the forum State," and "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 284-85 (emphasis in original). Thus, "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 290.

Here, the Complaint identifies only one purported forum-directed act: the conclusory allegation that Aspire "directed" the February 13th call to Plaintiff in Virginia, without any supporting factual allegations. Compl. ¶ 8. However, Aspire's Declaration establishes that the challenged call was not a Virginia contact created by Aspire: Aspire did not place, authorize, or direct the February 13th call to Plaintiff. Decl. ¶¶ 7. Plaintiff's own residency remains the only asserted link between Aspire and this forum, which is exactly what *Walden* holds is constitutionally insufficient. 571 U.S. at 285-86, 290.

This is not a case in which Aspire engaged in a course of communications, negotiations, or other conduct purposefully directed toward Virginia. Indeed, in *Consulting Engineers*, the Fourth Circuit found purposeful availment lacking despite multiple telephone calls and emails with a Virginia resident concerning the negotiation of potential business relationships, emphasizing that the "quality and nature" of the contacts and the surrounding circumstances did not demonstrate purposeful availment of the forum. 561 F.3d at 279-82. Here, the suit-related contact is more attenuated still: Aspire did not initiate, authorize, or direct the communication giving rise to Plaintiff's claims at all.

Because Plaintiff cannot establish purposeful availment, the specific-jurisdiction inquiry ends there. *Consulting Eng'rs*, 561 F.3d at 278.

**D. The Post-Callback Email Does Not Supply the Missing Jurisdictional Link.**

The Complaint's only concrete connection between the alleged sequence of events and Aspire is an email Plaintiff received after he called the number provided in the prerecorded message. Compl. ¶¶ 19-23. But that subsequent communication does not establish that Aspire initiated the antecedent contact with Virginia. The Complaint itself alleges that Plaintiff, ***not Aspire***, initiated the callback, and Aspire's Declaration establishes that Aspire did not place or direct the challenged prerecorded call providing any callback number. Decl. ¶ 7-8.

Specific jurisdiction must arise from contacts "that the defendant himself creates with the forum State," not contacts resulting from "the unilateral activity of another party or a third person." *Walden*, 571 U.S. at 284 (internal quotation marks omitted). Plaintiff's own decision to return an unidentified caller's call therefore cannot, without more, transform the antecedent prerecorded call into Virginia-directed conduct by Aspire.

Nor does the subsequent appearance of Aspire's website in an email signature retroactively establish that Aspire placed, authorized, or directed the earlier call. Aspire's Declaration directly refutes that inference: Aspire did not place, authorize, or direct the challenged call. Decl. ¶ 7. Because Plaintiff identifies no other suit-related conduct by Aspire purposefully directed toward Virginia, he cannot establish the minimum contacts necessary for specific jurisdiction.

As such, the Complaint should be dismissed under Rule 12(b)(2).

## II. COUNT I FAILS BECAUSE PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT ASPIRE MADE THE CALL OR IS VICARIOUSLY LIABLE FOR IT.

To state a claim under 47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must allege "(i) defendant made one or more calls (ii) to plaintiff's cellular phone (iii) using an automatic telephone dialing system… or an artificial or prerecorded voice." *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *1 (E.D. Va. Apr. 15, 2019). A defendant "makes" a call within the meaning of the statute either because it "actually, physically initiated the telephone call at issue" (direct liability), or because it is vicariously responsible for a third party's call under federal common-law agency principles (vicarious liability). *Id*. at *2. Under a theory of direct liability, "at the pleading stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls." *Id.* A theory of vicarious liability requires facts establishing that the third-party caller acted as the defendant's agent under federal common-law agency principles. *Id.* at *3.

Here, the Complaint satisfies neither theory.

### A. No Direct Liability: Plaintiff Does Not Plausibly Allege That Aspire Directly Made the Prerecorded Call.

The Complaint pleads no facts plausibly identifying Aspire as the entity that physically initiated the challenged call. The prerecorded message, quoted in full in the Complaint, does not mention Aspire, reference a law firm, or identify "Kiana Navarro" as an Aspire employee,

contractor, or agent. Compl. ¶ 18. The Complaint does not allege that the callback number, 855-909-0914, belongs to or is controlled by Aspire. Nor does it identify the number from which the prerecorded call originated, much less allege that the originating number belongs to Aspire. And although Plaintiff alleges that he subsequently called back and spoke with an unidentified live agent, he alleges no facts showing that the agent was employed by or affiliated with Aspire. *Id.* ¶¶ 19-20.

This Court recently dismissed a materially similar TCPA claim in *Matthews*. There, the plaintiff alleged that calls were "from" the defendant insurer and that a caller identified himself as the defendant's "employee" -- allegations considerably more specific than those pleaded here. *Matthews v. Senior Life Ins. Co.*, No. 1:24-CV-1550-MSN-LRV, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025). Yet the Court held those assertions insufficient because the plaintiff did not "link" the calling number to the defendant or plead facts "to substantiate" the assertion that the caller worked for it. *Id.* The same attribution defect is even more pronounced here: Plaintiff does not identify the originating number at all, does not allege that Navarro has or claimed any affiliation with Aspire, and does not allege that anyone identified Aspire during the challenged prerecorded call. *See also Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("[W]ithout any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls...Therefore, plaintiff has failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations do not show plausibly that defendant actually, physically initiated the telephone calls at issue.").

Plaintiff cannot fill that factual gap merely by repeatedly labeling Aspire as the entity that "called" or "placed calls" to him. Compl. ¶¶ 16, 35. Under *Matthews* and *Aaronson*, such

conclusory characterizations do not plausibly establish that Aspire "actually, physically initiated" the challenged call. *Aaronson*, 2019 WL 8953349, at *2. Count I therefore cannot proceed against Aspire on a theory of direct liability.

**B. No Vicarious Liability: Plaintiff Does Not Plead Facts Supporting Vicarious Liability.**

Nor does the Complaint plausibly allege that Aspire is vicariously liable for a call initiated by someone else.

The Fourth Circuit recognizes TCPA vicarious liability under traditional federal common-law agency principles, including actual authority, apparent authority, and ratification. *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 251-53 (4th Cir. 2018). A plaintiff relying on vicarious liability must plead facts plausibly establishing an agency relationship between the defendant and the party that actually initiated the challenged call. *Aaronson*, 2019 WL 8953349, at *2. Specifically, a plaintiff "must allege *some* facts regarding the relationship between an alleged principal and agent" showing that the defendant had the right to control the party making the calls; he "cannot simply allege general control in a vacuum." *Id.* at *3 (emphasis in original, internal citation omitted). The Complaint does not plead facts supporting any recognized agency theory.

**Actual authority.** The Complaint does not identify the person or entity that placed the prerecorded call, much less allege that Aspire retained that person or entity, authorized the challenged calling activity, supplied Plaintiff's telephone number, prescribed the means or manner of solicitation, or exercised any control over the caller's conduct. Indeed, the Complaint does not allege any contractual or other relationship at all between Aspire, on the one hand, and Navarro, the unidentified live agent, or whoever actually initiated the challenged call, on the other hand. There are therefore no pleaded facts from which an actual-agency relationship could plausibly be inferred.

**Apparent authority.** The Complaint likewise alleges no manifestation by Aspire that could have caused Plaintiff reasonably to believe that the unidentified caller was authorized to act on Aspire's behalf. To the contrary, the prerecorded message itself never mentions Aspire, never references a law firm, and never identifies Navarro as affiliated with Aspire. Compl. ¶ 18. The Complaint thus identifies no act or representation by Aspire before or during the challenged call that could have clothed the caller with apparent authority to act on Aspire's behalf.

**Ratification.** Finally, the Complaint does not allege that Aspire knew of the challenged prerecorded call or the material circumstances under which it was made and thereafter knowingly adopted the caller's conduct or accepted its benefits. Plaintiff alleges only that, after he initiated a callback and spoke with an unidentified live agent, he received an email containing a link to Aspire's website. *Id.* ¶¶ 19-23. That downstream connection does not itself allege that Aspire knew how Plaintiff was initially contacted, much less that Aspire knowingly ratified the use of a prerecorded call to contact him.

Plaintiff therefore has not identified the caller, alleged any relationship between the caller and Aspire, or otherwise pleaded facts showing Aspire's authorization or control, any manifestation of authority by Aspire, or Aspire's knowledge and ratification of the challenged conduct. Count I therefore cannot proceed against Aspire on a theory of vicarious liability.

### C. The Subsequent Enrollment Email Does Not Cure the Attribution Defect.

Plaintiff's only alleged connection to Aspire arises only **after** the challenged prerecorded call had ended and Plaintiff himself called the number provided in the recording. Plaintiff alleges that, after speaking with an unidentified live agent, he received an email from "Joseph Adams" containing a link to an enrollment page and that the email's signature block included a link to Aspire's website. Compl. ¶¶ 19-23. Even accepting those allegations as true, they establish at most

a downstream connection between Plaintiff's voluntary callback and Aspire. They do not plausibly establish that Aspire initiated, authorized, or is vicariously liable for the antecedent prerecorded call.

*Matthews* is particularly instructive. There, the plaintiff alleged not merely a later connection to the defendant, but that the callers themselves asked questions about whether the plaintiff qualified for ***the defendant's own life-insurance product***. *Matthews*, 2025 WL 1181789, at *3. The Court nevertheless held that this fact was "not sufficient to identify [the defendant] as the caller." *Id.* (citing *Smith v. Direct Building Supplies, LLC*, No. 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (mere allegation that defendant attempted to solicit plaintiff to purchase defendant's services was insufficient)). If solicitation of the defendant's own product during the challenged calls was insufficient in *Matthews*, the inference is weaker still here, where Aspire was never mentioned during the challenged call and appears only later, after Plaintiff himself initiated a callback and received a subsequent email.

That subsequent email does not supply the missing connection. At most, it establishes that Aspire's name surfaced after Plaintiff voluntarily returned the call. It does not identify who placed the original call, establish any relationship between Aspire and that unidentified caller, or allege facts showing that Aspire authorized or knew of the challenged calling activity. The Complaint therefore asks the Court to infer Aspire's responsibility for the earlier call solely from a connection that arose later in the sequence of events. *Aaronson* requires that attribution to be plausibly supported by facts, not presumed. 2019 WL 8953349, at *2. Because the Complaint supplies no such facts, Count I should be dismissed.

## III. COUNT II FAILS TO STATE A CLAIM UNDER THE VIRGINIA TELEPHONE PRIVACY PROTECTION ACT

Count II requires a separate analysis because the VTPPA's liability structure differs from the TCPA's common-law agency framework. The VTPPA defines a "telephone solicitor" as a person who "makes or initiates, or causes another person to make or initiate," a telephone solicitation, and a "seller" as a person on whose behalf or for whose benefit a solicitation "offering or advertising the person's property, goods, or services is made or initiated." Va. Code Ann. § 59.1-510.

The Complaint fails at each step: it does not plausibly allege that (1) Aspire made, initiated, or caused the challenged call; (2) the solicitation offered or advertised Aspire's property, goods, or services; and (3) the solicitation violated any substantive VTPPA prohibition.

### A. Plaintiff Does Not Plausibly Allege That Aspire Was the "Telephone Solicitor."

Count II asserts only that "Defendant initiated telephone solicitation calls to Plaintiff and members of the Virginia Subclass." Compl. ¶ 63. That is a legal conclusion, not a factual allegation, and it suffers from the identical attribution defect discussed above with respect to Count I. Nothing in the Complaint ties Aspire to the person who recorded or placed the prerecorded message, the number from which the call originated, the callback number, or the live agent Plaintiff subsequently reached. As this Court held in *Aaronson*, a plaintiff cannot establish responsibility for a challenged call merely by alleging that the defendant made it; the complaint must plead facts supporting that attribution. 2019 WL 8953349, at *2; *see also*, *supra* Part II.A.

Nor does the Complaint plead facts showing that Aspire "cause[d] another person to make or initiate" the challenged solicitation, as the alternative means by which Aspire could qualify as a "telephone solicitor" under § 59.1-510. It does not identify who made the call, allege any

relationship between Aspire and that unidentified caller, or allege any facts showing that Aspire requested, directed, authorized, or otherwise caused that person or entity to call Plaintiff. A bare assertion that "Defendant initiated" the solicitation cannot substitute for facts plausibly showing either that Aspire initiated the call itself or caused someone else to do so. Accordingly, the Complaint does not plausibly allege that Aspire was a "telephone solicitor" within the meaning of the VTPPA.

### B. Aspire Is Not Plausibly Alleged to Be a "Seller" Because the Solicitation Did Not Advertise Aspire's Property, Goods, or Services.

The Complaint does not plausibly allege that Aspire was a "seller" within the meaning of the VTPPA. The statute defines a "seller" by reference to ***what the challenged solicitation actually offers or advertises***: a "seller" is a person on whose behalf or for whose benefit a solicitation "offering or advertising the person's property, goods, or services is made or initiated." Va. Code Ann. § 59.1-510. Thus, to plausibly allege that Aspire was the seller, the Complaint must allege facts showing that the challenged solicitation offered or advertised Aspire's property, goods, or services. It does not.

According to the Complaint itself, the prerecorded message advertised an approval for "$39,000 with a 60 month term." Compl. ¶ 18. Plaintiff expressly characterizes the message as advertising "an extension of credit." *Id.* ¶¶ 24-25, 66. That characterization tracks the VTPPA itself, which expressly includes within the definition of a "telephone solicitation" a call "offering or advertising an extension of credit." Va. Code Ann. § 59.1-510. Aspire, by contrast, is a law firm. The Complaint does not allege that Aspire is a lender, that Aspire extended or offered to extend the $39,000 loan described in the recording, that Aspire owns or originates the credit product referenced in the call, or that Aspire otherwise offers the property, goods, or services

actually advertised in the message Plaintiff heard. Indeed, the message itself never mentions Aspire, a law firm, legal services, or debt-resolution services. Compl. ¶ 18.

That mismatch defeats Plaintiff's seller theory under the statutory text. Section 59.1-510 does not define a "seller" as any person who may ultimately benefit from a lead generated by a telephone solicitation. It identifies as the "seller" the person on whose behalf or for whose benefit the solicitation ***"offering or advertising the person's property, goods, or services"*** was made. Va. Code Ann. § 59.1-510. Section 59.1-514.1(B) repeats that limitation: its presumption applies to "[a] telephone solicitation offering or advertising a seller's property, goods, or services." *Id.* § 59.1-514.1(B). The presumption therefore does not dispense with the threshold requirement that the challenged solicitation actually offer or advertise the property, goods, or services of the defendant asserted to be the seller. The Complaint does not plausibly allege that predicate here.

Plaintiff cannot cure that defect by relying on what occurred after the solicitation ended. Plaintiff alleges that, after he voluntarily called the number provided in the recording, participated in an "application and enrollment process," and spoke with an unidentified live agent, he received an email whose signature block included a link to Aspire's website. Compl. ¶¶ 19-23. Whatever downstream connection those allegations may suggest between Aspire and Plaintiff's subsequent enrollment process, they do not change what the antecedent solicitation actually offered or advertised: an alleged $39,000 extension of credit. Compl. ¶ 18. The later appearance of Aspire's name therefore does not transform a solicitation advertising an extension of credit into one "offering or advertising" Aspire's property, goods, or services within the meaning of §§ 59.1-510 and 59.1-514.1(B).

Because the Complaint does not plausibly allege that the challenged solicitation offered or advertised Aspire's property, goods, or services, Aspire is not plausibly alleged to be a "seller"

under § 59.1-510, and Plaintiff has not alleged the predicate necessary to invoke § 59.1-514.1(B)'s joint liability presumption against Aspire.

### C. Count II Does Not Plausibly Allege a Violation of Any Substantive VTPPA Provision.

Count II fails for an additional, independent reason: alleging that the challenged call was a "telephone solicitation" is not the same as alleging that it was a telephone solicitation prohibited by the VTPPA. The VTPPA does not prohibit any and all telephone solicitations merely because they offer goods, services, or an extension of credit. Rather, §§ 59.1-511 through 59.1-514 impose ***particular restrictions*** on such solicitations, and § 59.1-515 provides a private right of action for a violation of the specific restrictions imposed by those specific provisions. Va. Code Ann. §§ 59.1-511-515.

Count II alleges that the prerecorded message offering a $39,000 loan "constituted a telephone solicitation call because it was made for the purpose of advertising, promoting, marketing, or offering an extension of credit." Compl. ¶ 66. That allegation addresses what constitutes a "telephone solicitation" under § 59.1-510; it does not identify what made this particular solicitation ***unlawful*** under §§ 59.1-511 through 59.1-514. Count II instead jumps directly to the conclusion that "Defendant's acts and practices violated the Virginia Telephone Privacy Protection Act," without identifying the substantive prohibition allegedly violated or pleading the facts necessary to establish one. *Id.* ¶ 67.

The Complaint's introductory reference to the National Do-Not-Call Registry does not fill that gap. Paragraph 2 states generally that this action concerns calls delivered to "cellular telephone numbers registered with the National Do-Not-Call Registry," Compl. ¶ 2, but nowhere does Plaintiff allege that his own telephone number was registered on the Registry when the challenged call occurred**.** Nor does Plaintiff allege that he previously requested not to receive telephone

solicitations from Aspire or plead other facts establishing that the February 13th call violated a substantive prohibition contained in §§ 59.1-511 through 59.1-514. Thus, the Complaint does not plead the factual predicates necessary to allege a violation of either § 59.1-514(A) or § 59.1-514(B).

Plaintiff therefore attempts to plead facts directed to the VTPPA's definition of a "telephone solicitation," but not the facts necessary to show ***why that solicitation was unlawful under the VTPPA***. The conclusory allegation that Aspire "violated" the Act cannot supply the missing elements. *See Iqbal*, 556 U.S. at 678. Count II should be dismissed on this independent ground.

## IV. PLAINTIFF LACKS ARTICLE III STANDING TO SEEK INJUNCTIVE RELIEF, AND HIS REQUESTS FOR DECLARATORY RELIEF PRESENT NO ONGOING CONTROVERSY

The Complaint alleges a single call on a single date, February 13, 2026. Compl. ¶ 16. It does not allege that Plaintiff received another call thereafter, that Aspire has threatened or intends to contact Plaintiff again, or that Plaintiff otherwise faces an ongoing or imminent risk of receiving another allegedly unlawful call. Yet Plaintiff seeks an order "permanently enjoining Defendant from engaging in the unlawful conduct alleged herein." *Id.*, Prayer for Relief ¶ F. He also seeks declarations that Aspire "violated" the TCPA and VTPPA -- relief directed exclusively to alleged past conduct. *Id.* ¶¶ D-E.

Article III standing must be established separately for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Thus, even where a plaintiff plausibly alleges a past injury sufficient to pursue damages, prospective equitable relief requires a separate showing of an ongoing or threatened injury. *Lyons*, 461 U.S. at 105-06, 111. A plaintiff seeking to enjoin future conduct must demonstrate that he is "immediately in danger of sustaining some direct

injury," and that the threatened injury is "real and immediate," rather than "conjectural" or "hypothetical." *Beck*, 848 F.3d at 277 (quoting *Lebron v. Rumsfeld*, 670 F.3d 540, 560 (4th Cir. 2012)). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* (quoting *Lyons*, 461 U.S. at 95-96).

Plaintiff does not come close to satisfying that requirement. On the facts alleged, any possibility that Plaintiff might someday receive another allegedly unlawful call is speculative, not the "real and immediate" threat Article III requires. *Lyons*, 461 U.S. at 105-06, 110-11. Indeed, in *Beck*, the Fourth Circuit found prospective standing lacking despite prior data-security incidents and allegations of continuing practices that could expose the plaintiffs to future harm. 848 F.3d at 275-78 ("[a]bsent a sufficient likelihood that [plaintiffs] will again be wronged in a similar way," past violations do not establish a real and immediate threat of future injury). Here, the alleged threat of recurrence is weaker still: Plaintiff identifies only one call and alleges no facts suggesting that another will occur.

Plaintiff's requests for declaratory relief suffer from a related defect. The Prayer for Relief asks for declarations that Aspire "violated" the TCPA and "violated" the VTPPA. Compl., Prayer for Relief ¶¶ D-E. Those requests concern only completed past conduct; Plaintiff does not seek a declaration governing an ongoing relationship or threatened future conduct.

The Fourth Circuit makes clear that a plaintiff has standing to seek declaratory relief only if the requested declaration itself would redress an injury. *Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025). Where the alleged injury has already occurred, the plaintiff must identify some tangible benefit the declaration's preclusive effect is likely to provide; otherwise, the declaration amounts only to "a judicial announcement that a past event broke the law." *Id.* at 302, 305; *see also Green v. Mansour*, 474 U.S. 64, 73 (1985) (declaratory relief inappropriate where there was

no continuing violation or threat of future violation). No such "tangible benefit" of the requested declaration is plausibly alleged here. A declaration that Aspire "violated" the TCPA or VTPPA based on the single February 13th call would merely adjudicate the legality of completed conduct for which Plaintiff separately seeks statutory damages; the Complaint identifies no ongoing relationship, threatened future contact, or other circumstance in which the requested declarations would redress an injury.

Whatever standing Plaintiff may have to seek damages for the alleged February 13th call, the Complaint alleges no ongoing or imminent injury that could support the permanent injunction he requests and no ongoing controversy warranting declaratory relief. Plaintiff's requests for injunctive and declaratory relief should therefore be dismissed under Rule 12(b)(1).

## V. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE WILLFUL OR KNOWING CONDUCT WARRANTING TREBLE DAMAGES UNDER THE TCPA

Plaintiff seeks treble damages under 47 U.S.C. § 227(b)(3) based on the conclusory allegation that Aspire "willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A)(iii)" by "willfully and knowingly" using an artificial or prerecorded voice without consent. Compl. ¶ 58; Prayer for Relief ¶ H. Section 227(b)(3) permits the Court, in its discretion, to increase statutory damages up to threefold if "the defendant willfully or knowingly violated" the TCPA. 47 U.S.C. § 227(b)(3). Plaintiff's conclusory recitation of that standard, however, is unsupported by facts plausibly showing willful or knowing conduct by Aspire.

This Court recently dismissed a request for TCPA treble damages where the complaint failed to plead facts plausibly supporting its conclusory assertion that the defendant acted willfully or knowingly. *McGonigle v. Dickey's Barbecue Restaurants, Inc.*, No. 1:25-CV-01062 (RDA/IDD), 2026 WL 2114507, at *5 (E.D. Va. July 22, 2026). The court held that the plaintiff's

failure to plead facts supporting willful or knowing conduct warranted dismissal of the request for treble damages. *Id.*

The deficiency is even more fundamental here. The Complaint does not plausibly allege that Aspire knew of or participated in the challenged calling activity at all, much less that it knowingly or willfully engaged in the conduct underlying the alleged TCPA violation. Plaintiff does not allege that Aspire knew a prerecorded voice would be used, authorized or directed its use, or knew of the challenged call before it occurred. Indeed, the Complaint does not identify who placed the call or plead facts connecting Aspire to its initiation. Against that backdrop, the bare assertion that Aspire acted "willfully and knowingly" does not plausibly support treble damages under § 227(b)(3). *See id.*; *Iqbal*, 556 U.S. at 678 (a "[t]hreadbare recital[]" unsupported by factual allegations is not entitled to the assumption of truth).

Accordingly, even if Count I survives dismissal, Plaintiff has not plausibly alleged a basis for treble damages under § 227(b)(3), and the request for such damages should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Aspire Law Group, PLLC respectfully requests that the Court dismiss the Complaint in its entirety for lack of personal jurisdiction under Rule 12(b)(2) or, alternatively, dismiss Counts I and II for failure to state a claim under Rule 12(b)(6). To the extent any claim survives, Aspire respectfully requests that the Court dismiss Plaintiff's requests for injunctive and declaratory relief under Rule 12(b)(1) and his request for treble damages under 47 U.S.C. § 227(b)(3), together with such other and further relief as the Court deems just and proper.

Dated: August 17, 2026

*(signatures on following page)*

Respectfully submitted,

**COZEN O'CONNOR**

/s/ *Chad E. Kurtz*
Chad E. Kurtz
(VSB #88863)
2001 M Street NW, Suite 500
Washington, D.C. 20036
Tel: (202) 463-2521
Fax: (202) 640-5939
ckurtz@cozen.com

**SHIPKEVICH PLLC**

Rebecca Hall Klar
521 Fifth Avenue, Suite 1700
New York, NY 10175
Tel: (212) 252-3003
Fax: (888) 568-5815
rklar@shipkevich.com
*Pro Hac Vice Admission Pending*

***Counsel for Defendant***
***Aspire Law Group, PLLC***